May it please the court. My name is Jamie Crawford. I represent the Commissioner of Social Security in this matter. SSA rarely appeals district court decisions. Could you move the microphone a little so... Is that better? Is that better, Your Honor? I'm sorry. SSA rarely appeals district court decisions. The process for seeking approval to appeal from the Solicitor General is difficult. But when a significant legal issue arises, as in this case, the Commissioner seeks that authority. The issue here involves the Title II Trust Fund. The trust fund that has provided an economic safety net to hundreds of millions of Americans since the Great Depression. That fund first provided benefits to retired workers and their survivors, and then later to disabled workers. Title II is not a welfare program. It was not ever designed to be one. Title II is an insurance program, and the premiums on the insurance are paid through a tax on earnings. If the tax is not paid, the right to the insurance expires. Under Title II, this is the insured status requirement. Plaintiff in this case applied for Title II disability benefits. But based on limited earnings, her insured status expired on June 30, 2005. A unique aspect of this case is that Plaintiff also alleges her disability began on June 30, 2005. This means she had the legal burden of proving that she was disabled on that single date. She has very clearly failed to do that. The medical record from 2005, the year in which this one single relevant date appears, shows that Plaintiff had a period of lumbar back pain. And during the first six months of that year, she received treatment from a pain specialist, Dr. Chaplick. And she took pain medication, she received steroid injections, and one time when she received a type of treatment with electrical current used to deaden pain. But it's important to remember that during the first six months of 2005, when she received all of this treatment, she's not alleging she was disabled during that time. There is no medical evidence from June 30, 2005. But what we do have is the final report of Dr. Chaplick less than a month later. On July 25, he released Plaintiff from his care. He wrote a letter to Plaintiff's treating physician, and he wrote, Plaintiff reported doing very well. She rated her pain as a 0 to 4 on a 10-point pain scale, and she said she was taking no pain medication. Dr. Chaplick said, I don't have any further treatment recommendations for her. If she needs my care in the future, please refer her back to me. Plaintiff never returned to Dr. Chaplick. In a nutshell. What about Dr. Stasny's assessment? Dr. Stasny, Plaintiff relies heavily on Dr. Stasny, who is Plaintiff's long-term treating physician. His opinion was rendered in 2011, six years after the relevant period. In that assessment, he diagnoses Plaintiff primarily with COPD, oxygen dependency. That was a condition that arose many years after Mrs. Turpin's insured status. And that's clear in the medical records? Yes, it is, Your Honor. After 2005, Plaintiff remained fairly active. In fact, beginning in 2007 and continuing through much of 2009, Mrs. Turpin worked for her husband's company. She had a long history of heavy smoking. It appears she finally quit in 2007 but had increasing shortness of breath. She was diagnosed with COPD definitively for the first time in the record in 2008. 2009 appears to be the turning point, the pivotal year in her medical history. Several things happened in 2009. She'd been hospitalized a couple of times for COPD. It was in 2009 that this long-term treating physician, Dr. Stasny, advised her her condition would not improve, and he actually suggested that she get an evaluation for Social Security Disability. It was in 2009 that Plaintiff actually filed her application for benefits. And when she did so, she alleged disability due to COPD, not the lumbar back pain that the medical record shows in 2005. In fact, Dr. Stasny then referred her for counseling because she was developing depression as a result of struggling with the COPD, and that is what she reported to Dr. Sherman, the psychologist, in 2010. She said, I'm depressed, I've been struggling with COPD for about a year, and I've applied for disability. What this evidence shows is that Plaintiff believes she was disabled and she was very limited by COPD when she actually filed her application in 2009. It does not establish that she was disabled in 2005. She just simply has not met that legal burden. The ALJ had a tough task here. She had to assess a remote one-day period seven years in the past, and she did what she should have done. The record was sufficiently developed. There was no going back to that one-day point in time in 2005. So she called, consistent with agency policy, she called a supplemental hearing for the sole purpose of receiving testimony from an orthopedic specialist because back pain was the issue in 2005. And she relied on that testimony. And the bottom line is this RFC that she formulated is very restrictive. It really accounts for every possible credible limitation due to this back pain in 2005. Plaintiff has not stated or argued that there was any restriction in that RFC that should have been there that wasn't. For all of these reasons, we request that the ALJ's decision denying benefits in this case be affirmed. If there are no further questions, I'd like to reserve my time for rebuttal. Very well. We'll hear from counsel for Turpin. Ms. Myers. May it please the court. My name is Sharon Myers. Would you raise the lectern a little bit? There's a button to the left. Thank you. May it please the court. My name is Sharon Myers, and I represent Janet Turpin on her claim for disability benefits. I would say that this record does not support, this record supports the fact that Ms. Turpin has been disabled since prior to her date last insured in June of 2005. I think the main issue here is the treatment of Dr. Stastny's opinion. The regulations are clear that the treating physician is the best source of evidence as to how a claimant is functioning. That's unless the medical records are inconsistent with the treating physician's conclusion. That's correct. I think that it's important to note, however, that this doctor had a 10-year history of treating this woman, and moreover, nine times between just the 18 months prior to her date last insured, he examined her, he coordinated her care with the back pain specialist. And it's precisely this type of interaction with a person that is the reason for the ruling that these doctors... Well, did he rely on the COPD that wasn't diagnosed until 2008? I don't believe he did, Judge. And if you look at his questionnaire that's in question, we ask on there, have these limitations been present since June of 2005? And he specifically writes in, yes, at least with the back. So I think had he not indicated that her back issues were key to his opinion, that we could call that into question. But in July of 2005, Dr. Chaplick says the back, she doesn't even need any medications. Right. I think she had some short-lived relief, but she goes back in and sees him in September, and after those nerves had been burned, they were returning, and she was complaining of severe difficulties with her back just as early as September of 2005 in the record. So it's true that she did have some short-term relief, but again... Don't we, though, aren't we limited to her condition on June 30th? We have to show that she was disabled before her expiration of her insured status, yes. But then the entire record is in question. Once we show she's unable to work before her date last insured, that's all we need to show. She won't get benefits back that far, of course. She'll be limited just a year prior to her filing. But I think it's also important to note that when she filed her claim on the application, it asks, why did you stop working? And she indicates there that she quit driving her bus because of her back pain. So while she really quit working in, like, 01, driving a bus and working in the cafeteria, because of her severe back pain. It's true by the time she finally filed, it was her breathing that was a major issue, but the back has been an issue all along. And I'm sure that when she filed her claim with Social Security, that whoever took that application saw that she was last insured on that date, knew that in order to get any benefit at all, she had to show that she had been disabled part of that date, and that's why it's a one-day, you know, that's why that date comes into play. But certainly as an applicant for disability, she had no idea of the significance of that. But if you look at that, that's really, she stopped working because of her back back in 2001. But is prior to June 30th relevant? Because isn't that her claimed onset date? Yes, it's relevant because she has to be disabled before her insurance for Title II lapsed, and that's the date of that. But her claimed onset date is June 30th, which is the last day. Yes, yes. But effectively, it doesn't matter on the onset so much as long as it's before her date last insured, because she can only draw benefits for a year prior to her filing. So since she filed in 2000, you know, later on in 2010 or 11, that's the limit on that. But I think, again, Dr. Stastny coordinated her treatment not only with Chaplick, the pain management doctor, but also with a number of, like, a rheumatologist on down the line. He had the benefit of MRIs, CT scans. It's not like he didn't know this woman. Sixty examinations just in this record from 2004 through 3-11, March of 11. So that's a lot of interaction with a claimant. What was the nature of his practice, Dr. Stastny? I believe he was just his primary care physician, Your Honor. But, again, he did send her to the various specialists. I think he recommended on down the road the psychiatric treatment and the like, as her various pulmonologists and what have you, as the other conditions arose. And I think there's also an issue as to the combination of this woman's limitations. She did have documentation of chronic bronchitis before her date last insured in June of 2005, as well as the depression and the lumbar radiculopathy. And none of those were considered as severe impairments by this administrative law judge. So I believe that the district court was correct in finding that the totality of the evidence supported this woman's claim for benefits. Is there any evidence, though, that the lumbar radiculopathy, bronchitis and depression, did it impose limitations on her? I think it does. It's a de minimis test as far as a severe impairment. As long as it would limit the ability to work at all, it would be a severe impairment. And even if they're determined to be not severe, the combination of them, I would say, would absolutely limit her ability to work, and it wasn't considered. What were those limitations? Well, the radiculopathy was causing a lot of pain in her hip and down her leg, and the bronchitis, the breathing difficulties, she'd have, like, limitations in terms of- But did any doctor say she can't lift more than a certain amount or she can't stand more than a certain period of time? Yes. Those sort of limitations related to those conditions? Well, I think, again, it's the combination of her impairments. They weren't each laid out separately. Okay. Did any doctor say the combination of those? Well, I think Dr. Statsney did in his questionnaire and certainly took those into consideration. Apparently, these epidural injections did not help her very much. I think they did short-term, Your Honor, but not for the long run, nor did the nerve block, the burning of the nerves, the ablation that she had. That did give short-term response, but not over the long haul. That coupled with-she had just a lot of things going on, but the issue here is was her back disabling before this date last insured in June of 2005, and we believe that this record demonstrates that it absolutely does, particularly when coupled with the opinion of her long-term treating physician, Dr. Statsney. I think it's important to note that Dr. Lorber, the medical expert relied on, didn't even have the benefit of the claimant's testimony. He's looking at a very cold record, and by the commissioner's own regulations, you need something more to trump a long-term treating physician with this kind of knowledge and experience with the claimant. With all due respect to the district court, one almost senses from the district court's opinion that the district judge made his own credibility determination regarding the claimant's pain and all that sort of thing. I would suggest that perhaps the district court was relying on the support that she had from her treating doctor, Your Honor, because I think when you look at that, it gives much credibility to what she's arguing. Well, yes. He referred to the medical evidence as overwhelming. Yes, sir. It's a pretty summary opinion, though. It's two pages long, and the ALJ does 11 pages of analysis. I would concede that it's a short opinion, Your Honor, but I do believe that based on the regulations that state that unless you have better or more thorough evidence, a treating physician's opinion is to be given controlling weight. I don't believe that Dr. Lorber's summary review of a hard file, in light of the contrast with Dr. Statsney, can stand, so I believe that the district court was proper in reversing the ALJ's decision. Thank you, Your Honor. Very well. Thank you for your argument. Thank you. Ms. Crawford. Ms. Crawford. As an initial matter, I just want to point out that the ALJ here did find a severe impairment of degenerative back disease. She did recognize that impairment. As far as plaintiffs, the fact that she stopped work as a school bus driver in 2001 is also consistent with the ALJ's decision. She found that a plaintiff could not do her past relevant work, so that is not at issue. And she did assess a very restrictive RFC. As far as the complaints of lumbar radiculopathy, there is debate about whether that condition existed, but even if it did, the RFC limited this person to no use of foot controls, only occasionally pushing and pulling with her lower extremities. It would have accounted for anything that plaintiff claims resulted from lumbar radiculopathy. The bronchitis is something plaintiff had a history of asthma, and she did have bronchitis. But if you look a year before the relevant day to about six months afterwards, there was no bronchitis. So a period of about a year and a half, she had no bronchitis symptoms. As far as depression, she says she's taken medication since 1989, which means she worked a number of years with it but required no other treatment. The record clearly establishes that the depression that required treatment did not occur until 2010 when Dr. Stasny referred her to Dr. Sherman, and she said, I'm depressed because of the COPD I've been struggling with for about a year. So all of that is consistent. SSA plays a very important stewardship role in relation to the Title II benefit programs. The trust fund monies are limited, and millions of Americans depend on them today to meet necessary living expenses. If Mrs. Turpin had been insured for benefits in 2009 when she actually applied for them and when she was so limited by COPD, her claim may well have been paid. But in order to protect those trust fund monies for the Americans who are working and paying the premiums on the insurance for the millions who are receiving those benefits today and the millions of Americans who will hopefully have those benefits in the future, claims like Mrs. Turpin's must be denied. For those reasons, we request that this Court affirm the ALJ's decision denying those benefits here. Thank you. We thank both sides for the arguments and the briefs. The case is submitted, and we will take it under consideration.